IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL SPANGLER,

      Petitioner,

v.                       CASE NO. 3:14-cv-579-LC-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  In his Petition,

Petitioner contends that his trial counsel was ineffective based on four

grounds. (*Id.*) Respondent filed a response, ECF No. 7, along with relevant

portions of the state-court record. (ECF Nos. 7-1–7-6 ("Ex.")[1]) Petitioner

then filed a reply. (ECF No. 9.) Upon due consideration of the Petition, the

Response, and the state-court record, and the Reply, the undersigned

recommends that the Petition be denied.[2]

_____

[1] Where an exhibit is separately paginated, the pinpoint citations to the exhibits
will be the lettered exhibit followed by the appropriate page number(s). If an exhibit is
not separately paginated, the identification used will be the ECF designation at the top
of the page followed by the corresponding page number.

[2] Because the Court may resolve the Petition on the basis of the record, the
Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules

## Summary of State-Court Proceedings

In July 2009 Petitioner was charged with carjacking with a firearm or deadly weapon (Count I), robbery with a deadly weapon (Count 2), and false imprisonment (Count 3). (Ex. C at 1–2.) Petitioner proceeded to a jury trial on his charges, and he was found guilty as charged. (*Id.* at 72.) On May 19, 2010, Petitioner was adjudicated guilty and sentenced to two concurrent terms of 40 years' imprisonment, with a 40 year minimum mandatory sentence, on Counts I and II, and 10 years' imprisonment on Count III to run concurrently with Counts I and II.[3] (*Id.* at 103–07.)

Petitioner filed a direct appeal to the First District Court of Appeal ("First DCA"). (Ex. H.) The First DCA *per curiam* affirmed without opinion on October 22, 2010, and the mandate followed on November 9, 2010. (Exs. H, I.)

On March 28, 2011, Petitioner filed a Rule 3.850 motion for post-conviction relief. (Ex. K at 31–53.) Petitioner filed an amended motion on April 4, 2011, and then filed a notice of voluntary dismissal of this motion on May 26, 2011. (*Id.* at 54–108.) The trial court granted the voluntary dismissal of the motion on June 7, 2011. (*Id.* at 110.) Then on June 29,

---

Governing Habeas Corpus Petitions Under Section 2254.

[3] Petitioner received 370 days credit for time served. (Ex. C at 89.)

2011, Petitioner filed another Rule 3.850 motion, which the trial court struck on January 4, 2012. (*Id.* at 111–50, 155–57.) Petitioner was, however, provided leave to amend. (*Id.* at 156–57.)

On July 9, 2011, Petitioner filed his first motion to correct an illegal sentence pursuant to Rule 3.800(a). (Ex. Q.) The trial court summarily denied that motion on January 4, 2012. (Ex. R.) Petitioner did not appeal that decision.

Petitioner filed his amended Rule 3.850 motion on February 3, 2012, and he later amended Grounds One and Six. (Ex. K at 158–90, 264–80, 286.) The trial court held an evidentiary hearing on one ground, which alleged that an exhibit not admitted into evidence was sent to the jury during deliberations. (*Id.* at 291–344.) The trial court then denied Petitioner's motion. (*Id.* at 345–63.)

Petitioner appealed to the First DCA, which *per curiam* affirmed without opinion on September 17, 2013. (Ex. N.) The First DCA then denied Petitioner's motion for rehearing, and its mandate followed on December 3, 2013. (Exs. O, P.)

On February 7, 2012, Petitioner filed a petition alleging ineffective assistance of appellate counsel with the First DCA. (Ex. T.) The First DCA denied this petition on February 29, 2012. (Ex. V.) Petitioner filed a motion

for a rehearing, but the First DCA denied this motion on May 3, 2012. (Exs. W, X.)

Petitioner filed a second motion to correct an illegal sentence pursuant to Rule 3.800(a) on December 2, 2013. (Ex. Y.) The trial court granted this motion on April 21, 2014, eliminating the minimum mandatory term of 40 years' imprisonment. (Ex. BB.) Petitioner's sentence was amended and re-recorded on April 24, 2014. (Ex. CC.)

Petitioner then submitted the instant petition to prison officials for mailing on October 21, 2014. (ECF No. 1.)

## Section 2254 Standard of Review

The role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited. *Williams v. Taylor*, 529 U.S. 362, 403–04 (2000). Under section 2254(a), federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Additionally, federal courts must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

With regard to factual findings, under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); 28 U.S.C. § 2254(e)(1). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, as mentioned above, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

"[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003); *see also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006).

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1182 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014).  "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Jones*, 753 F.3d at 1182 (alteration in original) (quoting *Williams*, 529 U.S. at 413).

The Supreme Court has interpreted § 2254(d) as requiring that "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "[A]n 'unreasonable application' of [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S.Ct. at 1702. In other words, Petitioner must establish that no fairminded jurist would have reached the Florida court's conclusion. *See Richter*, 562 U.S. at 102–03; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir.2012). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact-finding only to the extent that the state court's ultimate conclusion relied on it. 633 F.3d at 1292. A federal habeas court can consider the full record before it to answer "the only question" that matters: "whether the state court's determination [was] objectively unreasonable." *Id.* at 1290.

## Ineffective Assistance of Counsel

Because Petitioner's claims allege ineffective assistance, a review of the applicable law is necessary. Under *Strickland v. Washington*, to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's performance was below an objective and reasonable professional norm, and (2) he was prejudiced by this inadequacy. *Strickland*, 466 U.S. 668, 686–96 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to

divine the lawyer's mental processes underlying the strategy." *Chandler v.*

*United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No

lawyer can be expected to have considered all of the ways [to provide

effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect

on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a

defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different."  *Id*. at 694.  A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome."  *Id*.

When the state courts have denied an ineffective assistance of

counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The

standard is not whether an error was committed, but whether the state

court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

A federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated another way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may the federal court grant relief. *Id*.

Even without the deference due under § 2254, the *Strickland*

standard for judging the performance of counsel "is a most deferential

one." *Id.* at 105.  When combined with the extra layer of deference that §

2254 provides, the result is double deference, and the question becomes

whether "there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard."  *Id*. Double deference is doubly difficult

for a petitioner to overcome, and it will be a rare case in which an

ineffective assistance of counsel claim that a state court denied on the

merits is found to merit relief in a federal habeas proceeding.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion. 28

U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate

review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must fairly present the claim

in each appropriate state court, thereby affording the state courts a

meaningful "opportunity to pass upon and correct alleged violations of its

prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

(internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

## DISCUSSION

**Ground One: Petitioner's counsel was not ineffective for failing to conduct an investigation and present expert testimony relating to the origination of phone calls from Petitioner's cell phone around the time of the crime.**

Petitioner contends that his trial counsel was ineffective for failing to conduct a reasonable pretrial investigation relating to the origination of the phone calls on Petitioner's cell phone during the time of the crime and for failing to present evidence from that investigation and expert testimony to the jury. Petitioner alleges that he informed his trial counsel that his cell phone records reflect that he called the cab company and ordered the cab for a third party from out of state. As a result, Petitioner requested counsel to investigate and retrieve cell tower records to show that he was in Louisiana and not in Pensacola, Florida, at the time of the crime. (ECF No. 1 at 4.)

Petitioner also alleges that he would have given testimony on his own behalf that he ordered the cab while he was near his residence in Louisiana. He says he would have testified that he had not been in Florida at the time and did not commit the robbery; instead, he would have testified

that he called the cab on request of a third party who was in Pensacola at that time. However, because his counsel failed to investigate and present evidence of the cell tower records, Petitioner was prevented from testifying on his own behalf—all of which he alleges constitutes ineffectiveness of counsel. (*Id.* at 5.)

In rejecting this claim on post-conviction review, the state court relied on the testimony of the cab driver victim, Christopher Burns, as well as the cell phone records admitted into evidence. At trial Burns testified that he received a pickup request for an individual at the Civic Inn, and when he arrived at the Civic Inn, Burns contacted the individual who made the request by calling the number used to order the cab. When an individual answered the phone, the individual stated to Burns, "Well, I see you dog" and then came out and got into the cab. (Ex. K at 348.)

The cell phone records admitted into evidence reflect the number assigned to Petitioner, (850) 377-7914. The records evidence that on February 9, 2009, at 8:25 p.m., someone placed a phone call on Petitioner's phone number and called the number of the cab company. The records reflect that at 8:33 p.m., Petitioner's phone number received a call from the Burns' phone number. (*Id.*)

Although Petitioner alleges that he was in Louisiana at the time of the

incident and although the phone records list "Baton Rouge" as the location

of origination for all calls from Petitioner's phone, the state court concluded

that

> [t]he record conclusively demonstrates that the person using [Petitioner's telephone number] was in Pensacola, Florida, on the night of the robbery. The person using [that number] indicated, while on the line with Burns, that he could see Burns and made his way to the taxi. If the person was in Baton Rouge, Louisiana, he would not have been able to see Burns or his taxi.
>
> Further, if a person in Baton Rouge was calling for a taxi in Pensacola . . . , there is no logical reason why that person would give his telephone number in Baton Rouge as the contact number for the passenger in Pensacola unless the person in Pensacola had no telephone access of his own. However, if the person in Pensacola had no telephone access of his own, he would not have been able to converse contemporaneously with Burns telephonically about the location of the taxi and to indicate that he saw Burns.
>
> Additionally, the telephone records were placed into evidence at trial. The jury was able to examine them during their deliberations. On the face of the telephone record, it states, "Baton Rouge, LA" in the "Origination" column with regard to the telephone call to Yellow Cab. The jury was able to see for themselves that the telephone call was shown to have originated out of state. To drive home the point, counsel asked the investigating detective whether he had triangulated the call to determine whether it had actually originated in Pensacola. He indicated that he had not done so. Therefore, the jury was aware of the dispute regarding where the telephone call had originated and the fact that the police had done nothing to prove their theory that the call had actually originated in Pensacola.

(*Id.* at 348–49) (footnotes omitted).

The trial court then went on to discuss the other evidence presented

at trial that the jury was able to use in reaching a verdict to show Petitioner

failed to show prejudice from his trial counsel's failure to investigate further:

> Moreover, the account for number (850) 377-7914 was assigned to Michael Spangler. When Michael Spangler's photograph was placed in a photographic lineup, Burns was able to identify Spangler as the perpetrator.
> Finally, the DNA was recovered from the steering wheel of the taxi. It was determined that Burns was the major contributor and [Petitioner] was possibly the minor contributor. The expert testified that one in 32,000 Caucasians would match the minor contributor's DNA profile. Michael Spangler's DNA was a match to the minor contributor DNA profile. A black baseball cap was also recovered from the scene. The expert testified that one in 57 Caucasians would match the DNA profile recovered. Michael Spangler was a match to that DNA profile. Based on these considerations, the Court finds that ground one does not entitle Defendant to relief because he has not shown that he was prejudiced by counsel's omission.

(*Id.* at 349–50) (footnotes omitted). The First DCA *per curiam* affirmed

without opinion.  (Exs. N, P.)

Considering the state court already denied this claim on the merits,

the Court must give the state court's finding double deference so that the

question for this Court becomes whether "there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard."

*Harrington*, 562 U.S. at 105. Here, a reasonable argument exists that

counsel satisfied *Strickland*'s deferential standard and, therefore, that the

state court's rejection of Petitioner's argument and application of *Strickland*

was not objectively unreasonable.

As discussed above, to prevail on this claim based on ineffectiveness of counsel, Petitioner must show (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that Petitioner was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The Court may dispose of the claim if Petitioner fails to carry his burden of proof on either the performance or the prejudice prong. *Id.* at 697. Here, Petitioner has failed to show either prong of the *Strickland* test.

With regard to the performance prong, Petitioner has failed to show that counsel's conduct was below an objective and reasonable professional norm in not conducting further investigation into the cell tower records or presenting expert testimony regarding this investigation. To meet this standard, Petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Grayson*, 257 F.3d at 1216.

Petitioner, has failed to show that his counsel acted unreasonably in failing to investigate further or present resulting testimony or that no other competent counsel would have decided not to conduct any additional investigation into the phone records and present testimony explaining that investigation. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that

makes particular investigations unnecessary. In an ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Based on the evidence counsel did have, there was no reason for counsel to conduct any further investigation or to present evidence regarding such investigation. While the phone records list the location of origination as Baton Rouge, Louisiana, that listed origination location does not mean that is where the telephone call actually originated from. Instead, it reveals where Petitioner purchased his prepaid phone.

Further, the victim testified that he called Petitioner's phone number and someone answered. The person answering the phone stated that they saw the victim, and then shortly after that an individual approached and entered the cab. Lastly, it is illogical for someone located in a different state to order a cab on behalf of another individual. Petitioner's allegations therefore do not support conducting further investigation. Consequently, counsel's decision not to investigate further or present expert testimony of the investigation was more than reasonable under the circumstances.[4]

---

[4] Petitioner also alleges that his counsel's failure to investigate prevented him from testifying on his own behalf. The trial transcript, however, reflects that Petitioner voluntarily waived his right to testify, even after the trial judge offered Petitioner multiple chances to change his mind. (Ex. D at 104–06.)

With regard to the prejudice prong, Petitioner has failed to show that he was prejudiced by his counsel's conduct. To show prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id.* at 693. Although Petitioner argues that the evidence at trial would have been drastically different had his trial counsel conducted this additional investigation, the only support Petitioner offers to show that this investigation would have resulted in the conclusion that Petitioner was in Louisiana at the time of the calls is his own conclusory allegations.

Further, the trial court in rejecting Petitioner's claim in his post-conviction relief motion correctly noted the evidence that the jury could consider in reaching its verdict: the cell phone records listing Baton Rouge as the location of origination, the testimony of the investigating officer that he did not look into the exact location from which the call to the cab originated, the DNA evidence showing that Petitioner was possibly a minor contributor to the DNA lifted from the steering wheel of the cab as well as a potential match to the DNA lifted from the baseball cap found near the scene, and the victim's identification of Petitioner during a photographic

lineup two months after the crime.

Based on the evidence supporting Petitioner's conviction and the lack of any evidence supporting Petitioner's claim that he was actually in Louisiana at the time of the crime, the Court finds that Petitioner has failed to show he was prejudiced by his counsel's failure to investigate the exact location of origination of the phone call to the cab.

To grant habeas relief, the Court must find that the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). Because Petitioner has failed to prove either prong of the *Strickland* test, nothing Petitioner has presented demonstrates that the state court's rejection of this ineffective assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt,* 134 S. Ct. at 12 (quoting *Harrington*, 131 S. Ct. at 787). The Court therefore concludes that there is a reasonable argument that his counsel satisfied *Strickland*'s deferential standard, so Petitioner is not entitled to federal habeas relief on ground one.

**Ground Two: Petitioner's counsel was not ineffective for failing to make an objection or move to suppress DNA evidence from a "black ball cap."**

Petitioner contends that his trial counsel was also ineffective for

failing to make an objection to or move to suppress DNA evidence from a

"black ball cap" because, according to Petitioner, the State could not show

how the ball cap was connected to the crime. More specifically, Petitioner

states that the black ball cap was not present in the courtroom; the victim

did not identify it was worn by the perpetrator; and there was no evidence

that it was found at the crime scene. As a result, Petitioner argues that this

DNA evidence should have been excluded because it "was not legally or

logically relevant." Therefore, his counsel's failure to move for its exclusion

allowed prejudicial evidence against Petitioner at trial. (ECF No. 1 at 6.)

     In rejecting this claim on post-conviction review, the state court

reasoned that Petitioner

> has not sufficiently alleged prejudice. As noted above, Defendant
> maintained at trial and continues to maintain in the instant motion
> that he was not present at the time of the crime. Defendant has not
> shown how the State's use of the ball cap could have prejudiced him
> if his defense was one of misidentification. This allegation cannot
> entitle him to relief.

(Ex. K at 356.)  The First DCA *per curiam* affirmed without opinion.  (Exs.

N, P.)

     As the trial court correctly concluded, Petitioner has failed to show

that he was prejudiced by counsel's conduct. Despite Petitioner's

allegation that there was no connection between the ball cap and the

crime, the victim testified that the perpetrator was wearing a ball cap, Ex. D

at 20, and this black baseball cap was actually recovered near where the

taxi cab was found.[5]

Additionally, the fact that the DNA analysis performed on the cap

revealed that one in 57 Caucasians had DNA that matched, including

Petitioner, makes the DNA evidence relevant and probative. As a result,

any objection to or motion to suppress the DNA evidence would have been

overruled or denied, so Petitioner's counsel did not act unreasonably in

failing to make a losing objection or in failing to file a losing motion to

suppress.

Therefore, Petitioner has failed to show that there is a reasonable

probability that the result of the hearing would have been different had

counsel objected to or moved to suppress the DNA evidence. "An

attorney's failure to raise a meritless argument . . . cannot form the basis of

a successful ineffective assistance of counsel claim because the result of

the proceeding would not have been different had the attorney raised the

---

[5] During the probable cause hearing, the judge described the ball cap as "that cap that was found there where the cab was located." (Ex. C at 183.) Further, at trial one of the investigators testified that she received the black baseball cap from Deputy Brown that was collected as evidence. (Ex. D at 49.) The fact that the investigator stated she did not find the ball cap in or directly surrounding the cab where she was conducting her investigation does not mean that the ball cap was not found by a different officer near the cab and thus potentially relevant to the crime, particularly since the victim stated the perpetrator was wearing a hat.

issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2008) (finding that appellate counsel was "not ineffective for failure to raise a meritless argument"). Thus, Petitioner has failed to show prejudice.

Because Petitioner has not shown prejudice, the Court need not address the performance prong. The Court finds that the state court's decision denying this claim on post-conviction review is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Court therefore concludes that Petitioner is not entitled to federal habeas relief on ground two.

## Ground Three: Petitioner's counsel was not ineffective for failing to object to the prosecutor's inaccurate closing argument.

Petitioner next contends that his trial counsel was ineffective for failing to object to the prosecutor's closing argument, which misrepresented the substance and meaning of the DNA expert's testimony and thus the strength of the State's case. Specifically, Petitioner says that the prosecutor stated that his DNA was found on thirteen out of thirteen markers for both the steering wheel and the ball cap, when in fact the DNA expert had not been able to determine DNA results on all fourteen markers

for the steering wheel and instead only provided statistics for seven of the

steering wheel markers and six of the cap markers. According to Petitioner,

this misstatement of the DNA evidence was misleading and confused the

jury, and there is a reasonable probability that the result would have been

different had his counsel objected. (ECF No. 1 at 7–8.)

In rejecting this claim on post-conviction review, the state court

reasoned that

> [a] review of the testimony of the DNA expert reveals that
> the prosecutor's restatement of the evidence in closing
> argument was partially flawed. The DNA expert had noted that
> [Petitioner] was possibly the minor contributor to the DNA
> mixture on the steering wheel, that at seven markers his DNA
> was present, and that at two markers she got no DNA from the
> minor contributor at all. She further testified that at the four
> remaining markers, [Petitioner's] DNA came up but was below
> the threshold for doing statistical analysis.
>
> The prosecutor, therefore, misstated the evidence in that
> [Petitioner's] DNA was only present at eleven of thirteen
> markers, rather than at all thirteen; and statistics were done on
> seven markers, rather than on six. However, the jury had heard
> the evidence for themselves. As the jury was informed multiple
> times, what attorneys say in argument is not evidence. The jury
> was instructed that they alone must determine the actual "facts"
> of the case.
>
> Absent evidence to the contrary, the Court must presume
> that the jury acted in accordance with the law. *See Strickland*,
> 466 U.S. at 695 (stating that "the assessment of prejudice
> should proceed on the assumption that the decisionmaker [sic]
> is reasonably, conscientious, and impartially applying the
> standards that govern the decision"). *See also Sanders v.
> State*, 946 So. 2d 953 (Fla. 2006). [Petitioner] has shown
> nothing to indicate that the jury rendered a decision based on

the prosecutor's misstatement of the evidence as opposed to their own recollections thereof. Without such record evidence, the Court finds that [Petitioner] has failed to show that he was prejudiced.

Furthermore, the prosecutor's argument that the DNA evidence "doesn't tell us for sure that is the guy, but it tells us that he's there, his DNA is there" was not improper. The prosecutor recited the evidence that had been adduced at trial and suggested a reasonable inference that the jury could draw from that evidence. *See Gonzalez v. State*, 990 So. 2d 1017, 1028-1029 (Fla. 2008) (noting that closing arguments are properly used to inform the jury of the reasonable inferences that the attorney believes may be drawn from the trial evidence). The Court does not find it unreasonable for the prosecutor to have argued that the presence of DNA that included [Petitioner] could be construed to show that [Petitioner] was "there" in the tax on the night of the crime. Consequently, the Court finds that [Petitioner] has not shown that his attorney was deficient for failing to make a meritless objection. Hence, nothing in [this] ground . . . can entitle [Petitioner] to relief.

(Ex. K at 359–60) (footnotes omitted). The First DCA *per curiam* affirmed without opinion. (Exs. N, P.)

Because the state court already denied this claim on the merits, the Court must give the state court's finding double deference so that the question for this Court becomes whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, a reasonable argument exists that counsel satisfied *Strickland*'s deferential standard despite failing to object to the misstatements in the prosecutor's closing argument.

The trial court appropriately pointed out several misstatements that the prosecutor made during closing arguments: the prosecutor misstated that Petitioner's DNA was present at all thirteen markers on the steering wheel when his DNA was actually present at only eleven of those markers; he misstated that the expert performed statistics on six of the markers from the steering wheel, rather than the actual seven markers on which the statistics were performed; and he misstated that statistics were done on seven markers from the ball cap, when in fact the expert performed statistics using only six of the markers. (*See* Ex. D at 52–65, 125–140.) Notably and correctly, however, the trial court found that failing to object to these misstatements was not dispositive of whether Petitioner's trial counsel was ineffective.

Without addressing whether counsel's performance was deficient for failing to object to these misstatements,[6] the Court agrees with the state court that Petitioner has failed to show that he was prejudiced by his counsel's conduct. To show prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the

---

[6] The question of course is more than simply whether the prosecutor's comments were improper; the question is "whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Notably, "the Supreme Court has never held that a prosecutor's closing arguments were so unfair as to violate the right of a defendant to due process." *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287 (11th Cir. 2012).

result of the proceeding would have been different." *Strickland*, 466 U.S.
at 694. A "reasonable probability is defined as a probability sufficient to
undermine confidence in the outcome." *Id.* at 693. Petitioner has failed to
make this showing.

Although Petitioner argues that these misstatements during closing
arguments were misleading and confused the jury, there is no evidence
that the jury relied on these misstatements in reaching their verdict. The
jurors heard all the evidence presented regarding the DNA analysis
performed on the evidence, including the testimony from the  DNA expert
herself, and had access to the DNA expert's reports entered into evidence.
The jury also heard all the evidence presented against Petitioner in
addition to the DNA evidence, including the victim's identification of
Petitioner in a photographic lineup and phone records connecting
Petitioner's phone number to the victim's phone number.

Thus, while Petitioner makes the conclusory allegations that there
was an "absence of overwhelming guilt" and that but for this error there is a
reasonable probability that the jury would have reached a different verdict,
the actual evidence at trial—regardless of the misstatements in closing
argument, which do not constitute evidence—was more than sufficient for
the jury to find Petitioner guilty as charged.

The Eleventh Circuit repeatedly has denied claims of ineffective assistance of counsel in habeas proceedings when the petitioner failed to show that the results of the proceeding would have been different, despite the fact that defense counsel failed to object to improper comments made by the prosecutor. *See, e.g.*, *Thomas v. Sec'y, Fla. Dep't of Corr.*, 643 F. App'x 827 (11th Cir. 2016); *Muhammad v. McNeil*, 352 F. App'x 371 (11th Cir. 2009).

Accordingly, the Court has no trouble concluding that the state court's determination that Petitioner failed to show he was prejudiced by his counsel's failure to object is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Thus, Petitioner is not entitled to federal habeas relief on ground three.

**Ground Four: Petitioner's counsel was not ineffective for failing to move to suppress the photographic lineup.**

Lastly, Petitioner contends that his trial counsel was ineffective for failing to move to suppress the photographic lineup that he alleges was unnecessarily suggestive. Petitioner argues that this lineup was suggestive because he was one of only two individuals in the lineup with facial hair, and the other individual with facial hair had an obvious facial disfigurement.

Further, Petitioner's photo was one of two photos in the vertical layout, and

the other photo in the vertical layout was of an individual without facial hair.

Petitioner asserts that this photographic lineup was made on April 1, 2009,

nearly two months after the crime, and he asserts that the victim was

unable to make a positive identification of Petitioner in court during the

preliminary hearing on July 29, 2009, or at the trial on April 13, 2010.

Ultimately, Petitioner argues that this lineup was unnecessarily suggestive

and that its use during trial violated due process. (ECF No. 1 at 9–10.)

In rejecting this claim on post-conviction review, the state court first

cited the standard of review for state courts to use in determining whether

to suppress an out-of-court identification: "(1) [D]id the police employ an

unnecessarily suggestive procedure in obtaining an out-of-court

identification[?] (2) [I]f so, considering all the circumstances, did the

suggestive procedure give rise to a substantial likelihood of irreparable

misidentification[?]" (Ex. K at 352) (citing *Carter v. State*, 23 So. 3d 1238,

1245 (Fla. 4th DCA 2009)). The trial court then applied this standard to

Petitioner's case:

> Although [Petitioner] alleges that the lineup was "unnecessarily
> suggestive," this allegation is conclusory. [Petitioner] does not
> specifically allege how the police employed an unnecessarily
> suggestive procedure. Furthermore, [Petitioner] does not allege how
> the employed procedure gave rise to a substantial likelihood of

irreparable misidentification.

Moreover, [Petitioner's] own allegation shows that counsel's decision not to file a motion to suppress the lineup was strategic. "Reasonable strategic decisions of trial counsel should not be second-guessed by a reviewing court." *Jones v. State*, 845 So. 2d 55, 65 (Fla. 2003). Furthermore, "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).

[Petitioner] alleges that counsel told him that "she would not be filing any motion to suppress; rather, counsel indicated she wished to use the photo lineup during the trial." This allegation shows that counsel had considered the option of filing a motion to suppress but had decided to forgo that option in favor of a different strategy. The fact that the chosen strategy did not result in [Petitioner's] acquittal does not make the strategy unreasonable. *See Heath v. State*, 3 So. 3d 1017, 1029 (Fla. 2009) (stating that "[t]he fact that this defense strategy was ultimately unsuccessful with the jury does not render counsel's performance deficient"). The Court does not find counsel's performance to have been deficient, nor does the Court find that [Petitioner] has shown prejudice. [Petitioner] is therefore not entitled to relief on this claim.

(Ex. K at 352.)  The First DCA *per curiam* affirmed without opinion.  (Exs. N, P.)

As the trial court correctly concluded, Petitioner has failed to show that his trial counsel's decision not to move to suppress the photo lineup constitutes deficient performance—the decision did not fall below an objective and reasonable professional norm. Again, to meet this standard, Petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Grayson*, 257 F.3d at 1216. Petitioner has

failed to make that showing.

In assessing counsel's decision not to move to suppress the photo lineup, the Court's "inquiry is limited to whether [the] strategy . . . might have been a reasonable one." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). Here, the Court finds that despite Petitioner's conclusory allegation that the photo lineup was suggestive and would have been suppressed had his counsel made a motion to do so,[7] his counsel's decision not to move to suppress the lineup was not unreasonable in light of the circumstances.

Rather than moving to suppress the photo lineup, Petitioner's counsel used the photo lineup during the trial in cross-examining the investigator who presented the lineup to the victim. In questioning the investigator Petitioner's counsel highlighted that no individuals in the first photo lineup had facial hair and that only two people in the second photo lineup had facial hair.

With regard to the second lineup, counsel drew attention to the fact that the only individual with facial hair other than Petitioner had "messed up" eyes. Counsel also pointed out that the only individual with deep-set

---

[7] Notably, Petitioner has failed to show that any motion to suppress the photo lineup would have been granted.

eyes, other than Petitioner, did not have facial hair. Lastly, counsel noted

that the only photos in the up and down position were the one of Petitioner

and the one with the individual who had deep-set eyes but no facial hair.

(Ex. D at 84–86.)[8]

Based on counsel's strategic decision to use the photo lineup during

trial rather than move to suppress it, the jury learned from the trial

counsel's questioning of the investigator all of the potentially suggestive

elements of the lineup that Petitioner alleges in his petition. The jury was

then able to consider the potentially suggestive aspects of the photo lineup

during deliberations along with the actual photo lineup that was entered

into evidence to decide whether the victim's identification of Petitioner in

the photo lineup was reliable. Thus, the Court finds that this use of the

photo lineup was entirely reasonable and that Petitioner cannot show that

no competent counsel would have taken the action that his counsel did

take.

---

[8] Of course this was not the only testimony the jury heard about the photo lineup. The investigator testified that he showed Petitioner two lineups: one that did not contain Petitioner's photo and a second one that did. When presenting these lineups, he only asked the victim if he recognized anyone in the lineup that may have been involved in the crime. During the first lineup that did not contain Petitioner's photograph the victim did not identify anyone, but during the second photo lineup the victim immediately identified Petitioner. He also testified that the photo of Petitioner that was used in the lineup was a recent photo from the previous year. (Ex. D at 76–80, 99.) This testimony fails to show that there was anything improper about the photo lineup itself or the investigator's presentation of the photo lineup to the victim.

Because Petitioner has not shown deficient performance, the Court need not address the prejudice prong. The Court finds that the state court's decision denying this claim on post-conviction review is not contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Court therefore concludes that Petitioner is not entitled to federal habeas relief on ground four.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court

may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## CONCLUSION

Accordingly, it is respectfully **RECOMMENDED:**

1. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 14th day of December 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.